UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No.: 05-308(GK) |
| : | |
| JOHNNY LUCAS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States, by and through its attorney, Kenneth L. Wainstein, the United States Attorney for the District of Columbia, hereby submits its opposition to defendant's three Motions to Suppress Evidence. In support of this pleading, the government relies on the following facts, points and authorities, and such other facts, points and authorities as may be cited at a hearing on this matter:

**STATEMENT OF FACTS**

On or about May 21, 2005, MPD officers received a radio run for a man with a gun inside a red Volkswagen in the rear of 1140 North Capitol Street, NW. As the officers drove into the area, they saw some men walk away from a red Volkswagen and enter an apartment building. Witnesses in the area told the officers that the men who had walked away from the car were always selling drugs from it. The officers continued to watch the car, and the defendant and another person came out of the building and drove off in the car. The officers stopped the car, asked the defendant to step out of it, and inquired as to whether he had any drugs or weapons on him. The defendant said that he had his prescription medicine, and consented to a search of his person. The officers patted him down, and felt two pill bottles in his right front pants pocket. When they recovered the bottles, they found that one was empty, and one contained 10 Oxycontin pills. The labels on the bottle indicated

that they belonged to Lashawn Harrison. The defendant then said that the prescription was for his wife, but they were separated, and he could not reach her. The officers also recovered a blank Howard University Hospital prescription pad from defendant's pants pocket. The defendant was not arrested on this occasion. However, the officers obtained a search warrant for the defendant's apartment, which was in the building that he had come from to enter the car. This warrant was executed on June 10, 2005. As a result of the search warrant, officers recovered a loaded .38 caliber revolver next to an empty Oxycontin bottle, and $150. The pistol was missing its pistol grips, which were also found in the apartment. Also recovered were 41 rounds of .38 caliber ammunition, 34 rounds of .380 caliber ammunition, three other empty Oxycontin bottles in the names of other people, blank checks, and a number of outdated prescriptions scripts in the name of the defendant and other people, as well as rental receipts for the apartment in the defendant's name.

## ARGUMENT

**1. There is no basis to suppress the evidence recovered as a result of the execution of the search warrant due to any technical violation of the United States code or Rules.**

Section 3109 of 18 U.S.C., permits officers to break open a door to execute a search warrant after meeting a two-fold requirement: (1) that the officers announce their authority and purpose; and (2) that the officers reasonably believe that they have been refused admittance. <u>United States v. Covington</u>, 385 A.2d 164, 168 (D.C. 1978). The purpose of these requirements are to protect the individual's rights of privacy and to protect the officers, who might be mistaken for someone with no right to be there. <u>Sabbath v. United States</u>, 391 U.S. 585 (1968); <u>Brooks v. United States</u>, 263 A.2d 45, 47 (D.C. 1970). The requirements also serve to help prevent the unnecessary destruction

of property.  2 W. LaFave, Search and Seizure §4-8(a)(1978).  When police officers are faced with certain exigent circumstances, however, full compliance with the §3109 provisions may be excused.  United States v. Smith, 520 F.2d 74, 80 (1975).

    Here, the government expects to show that the officers, after knocking and announcing their presence, waited a reasonable time to allow the defendant to respond, then forced their way through the door.  The statutes regulating execution of warrants states that officers may break open a door after being "refused admittance."  18 U.S.C. §3109.  This requirement does not mean that officers must wait for an affirmative refusal, because frequently there will be none.  United States v. Covington, supra, 385 A.2d 168.  The focus is on what officers reasonably believe is sufficient time to allow defendants to respond under the circumstances.  "Failure to respond within a reasonable time [is] tantamount to a refusal.  A reasonable time is ordinarily very brief."  Id. at 169 n.7, (quoting United States v. James, 528 F.2d 999, 1017 (5th Cir.) cert. denied, 429 U.S. 959 (1976).  "At the most, the `refusal of admittance' requirement gives [a homeowner] a few moments to decide whether he will open the door himself . . ."  Matthews v. United States, 335 A.2d 251, 254 (D.C. 1975). (quoting United States v. Bustamonte-Gamey, 448 F.2d 4, 11 (9th Cir. 1973).  See e.g., United States v. Davis, 617 F.2d 677, 695 (1979)(15 to 30 seconds); United States v. Artieri, 491 F.2d 440, 444 (2d Cir.) cert. denied, 419 U.S. 878 (1974) (three seconds); United States v. Phelps, 490 F.2d 644, 647 (9th Cir. 1974) (court rejected defendant's request for a ten second rule).

    The defendant cannot complain that the officers' actions undermined the purposes of the search warrant statutes.  First, there would not have been any significant benefit to defendant's privacy interest through an additional delay of a few seconds.  Knocking forcefully on the door and authoritatively identifying themselves as police gave the defendant all the information he needed to

know. After the defendant failed to respond in a reasonable time, the officers forced their way in.

Similar considerations hold true for the defendant's argument that there is a failure of compliance with Rule 41(f). Initially, the government contests the truth of defendant's assertions that there has been a failure to comply with the rule. However, even if there has been a failure, defendant refers the Court to no case which even suggests that the sanction for such a failure is the suppression of the evidence obtained as a result of the search authorized by the warrant. Undersigned counsel is aware of no case that would suggest such a result.

**2. The Fourth Amendment was not violated by the officers' stop of the defendant. The subsequent search was consensual, and thus did not violate the Fourth Amendment.**

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court stated that "[s]treet encounters between citizens and police officers are incredibly rich in diversity," Id. at 13, and held that a police officer may stop and frisk a citizen even in the absence of probable cause if the officer knows reasonable articulable facts which, together with rational inference from those facts can justify such a momentary detention. Id. at 21; accord United States v. Brignoni-Ponce, 422 U.S. 873, 878-881 (1975).
> In Adams v. Williams, 407 U.S. 143 (1972), the Supreme Court admonished:
> The Fourth Amendment does not require a policeman who lacks the precise level of necessary information for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. Id. at 145.

Moreover, the determination of reasonableness under Terry is not simply an academic exercise but must be considered from the perspective of a "reasonable and cautious police officer on the scene, guided by his training and experience." United States v. Allen, 203 U.S. App. D.C. 17, 21, 629 F.2d 51,55 (1980), citing United States v. Young, 194 U.S. App. D.C. 377, 379, 598 F.2d 286, 288 (1979); see Adams v. Williams, supra, 407 U.S. at 145-146; Terry v. Ohio, supra, 392 U.S. at 27; Crawford v. United States, 369 A.2d 595, 599 (D.C. App. 1973).

Under Terry, reasonable and articulable suspicion that a suspect is committing, or has committed, a crime can permit the police to stop the suspect for a reasonable period of time to evaluate the situation. E.g., United States v. Gale, 952 F.2d 1412 (D.C. Cir. 1992); United States v. Clipper, 973 F.2d 944, 946 (D.C. Cir. 1992), cert. denied, 113 S. Ct. 1025 (1993); United States v. Laing, 889 F.2d 281, 285 (D.C. Cir. 1989), cert. denied, 494 U.S. 1069 (1990). A protective search during a Terry stop is permissible if the officer

> has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. <u>The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger</u>.

Laing, 889 F.2d at 285 (quoting Terry, supra, 392 U.S. at 27) (emphasis added).

Here, the officers received information that the car they had just observed and the men associated with it were involved in the illegal activity of selling drugs. Based on that information, the officers were justified in stopping the vehicle for the purpose of investigating whether criminal activity was afoot.

**3. The warrant in this case was supported by probable cause, and does not violate the Fourth Amendment.**

A search warrant, issued on the basis of an affidavit that on its face is sufficient to establish probable cause, is valid unless the defendant can establish that the affidavit contained a material false statement of the affiant, and that the affiant's inclusion of this false statement was intentional or reckless. Franks v. Delaware, 438 U.S. 154 (1978). As a practical matter, following the good-faith exception established in United States v. Leon, 468 U.S. 897 (1984), the only challenge a defendant

5

might successfully mount on a search warrant affidavit is that the affidavit contained intentional, material misrepresentations or omissions of fact. See Franks v. Deleware, supra. In order to obtain suppression of evidence seized pursuant to a search warrant assertedly based on a false affidavit, a defendant must specifically show that 1) the affidavit contained false statements or omissions; 2) the statements or omissions were material to the issue of probable cause; and 3) the false statements or omissions were made knowingly and intentionally, or with reckless disregard for the truth. Id. at 155-156.

Here, defendant makes no allegations that there are any material false statements in the warrant. Consequently, this challenge must fail also.

WHEREFORE, for these reasons and any other reasons as may appear to the Court at a hearing on this matter, the government submits that the evidence in this case were lawfully obtained, and that consequently, the defendant's Motions to Suppress Evidence should be denied.

        Respectfully submitted,

        KENNETH L. WAINSTEIN.
        UNITED STATES ATTORNEY

By: _____
     WANDA J. DIXON
     Assistant United States Attorney
     Organized Crime and Narcotics Trafficking Section
     555 Fourth Street, N.W., Room 4122
     Washington, D.C. 20530
     202/514-6997